THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* JOHN D. RADECKE, trading as RADECKE & CO.

*A Stationary steam engine not in itself a Nuisance—Power of the Mayor and City Council of Baltimore to legislate upon the subject of the erection and use of Steam engines within the City limits—Discretion of the Mayor and City Council of Baltimore as to such Legislation, and its enforcement—Such discretion not beyond Judicial Control in all cases—Power committed to the Mayor of Baltimore over the use of Steam within the limits of the City, practically absolute—Ordinance conferring such power, void—Jurisdiction in Equity to restrain the Enforcement of a void Ordinance.*

In 1866, R. applied to the Mayor and City Council of Baltimore for permission, which was granted, to erect and use on his premises and in the carrying on of his business of carpentering and box-making, a steam engine. The resolution granting this permit contained a provision in conformity to a City Ordinance on the subject, that the engine was "to be removed after six months notice to that effect from the Mayor." Thereupon R. erected his steam engine and continued to use the same until some time in 1873, when he received a notice from the Mayor to remove it, which he refused to do. After the expiration of six months, the city instituted a suit before a justice of the peace to recover the penalty for non-removal provided in the ordinance, and R. thereupon filed his bill praying an injunction to restrain the prosecution of that action, and others which the city threatened to bring from day to day, in order to enforce the removal of this engine. On appeal from the order of the Court below, granting the injunction as prayed and making it perpetual, it was HELD :

1st. That a stationary steam engine is not in itself a nuisance even if erected and used in the midst of a populous city, unless it interferes with the safety or convenience of the public in the use of the streets.

2nd. That the liability of a steam engine, in common with all other steam boilers, to explode, and its use in a business in which combustible materials

are necessarily brought into dangerous proximity to the fire in the boiler, thereby subjecting buildings and merchandise in that vicinity to increased danger from fire, do not make it a nuisance.

3rd. That the Legislature has granted ample power of legislation upon the subject of the erection and use of steam engines within the city limits, to the Mayor and City Council of Baltimore, independent of the power "to prevent and remove nuisances;" and as to the necessity for municipal legislation on this subject, the Mayor and City Council are the *exclusive judges*, while the selection of the means and manner of enforcing such legislation is committed to their *sound discretion*.

4th. That this discretion, though broad, is not absolutely and in all cases beyond judicial control; for there may be a case in which an ordinance, passed under a grant of power like this, is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the Legislature never intended to confer the power to pass it, and to justify the Courts in interposing and setting it aside as a plain abuse of authority.

5th. That the ordinance requiring the removal of steam engines in such cases as this, after notice from the Mayor, did not prescribe regulations for their construction, location or use, but committed to the unrestrained will of a single public officer a power over the use of steam within the limits of Baltimore City, practically absolute, so that he might prohibit its use altogether.

6th. That an ordinance which clothes a single individual with such power, the exercise of which may proceed from enmity or prejudice, from partizan zeal or animosity, from favoritism and other improper influences and motives, easy of concealment and difficult to be detected and exposed, hardly falls within *the domain of law*, and is void and inoperative.

7th. That where a municipal corporation is seeking to enforce an ordinance which is void, a Court of equity has jurisdiction, at the suit of any person who is injuriously affected thereby, to stay its execution by injunction.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*Thomas W. Hall* and *James L. McLane*, for the appellant.

This is simply a question as to the power of the city to regulate the use of steam machinery within the corporate limits.

The possession of this power depends upon the charter of the city, either as conferred by express terms or by necessary implication. This power is clearly derived from the general power to pass all ordinances necessary to give effect and operation to all the powers vested in the corporation of the city. *Art.* 4, *sec.* 33, *of the Code of Public Local Laws.*

The special jurisdiction or authority over the subject-matter of this controversy may be referred,

1st. To the power to pass ordinances for the prevention and extinguishment of fires. *Art.* 4 *of the Code of P. L. L., sec.* 236.

2nd. To the power to pass ordinances for securing property and persons from violence, danger or destruction, and for promoting the great interests and insuring the good government of the city. *Id. Section* 32 *of the same Article,*

These powers are usually styled police powers and regulations, and if any one is injured by their exercise it is *damnum absque injuria,* upon the principle that the safety of the people is the highest law, and that every owner of property must use it so as not to injure his neighbor, or the community at large. 1 *Dil. on Mun. Corp., sec.* 93, *p.* 210; *Cooley's Cons. Lims.,* 572, 594 *and* 595; *Commonwealth vs. Alger,* 7 *Cush.,* 53.

If the power is not to be found in these clauses of the city charter, then it is clearly referrible to the power to *prevent* as well as to *remove* nuisances. *Art.* 4, *sec.* 797, *of the Code of P. L. L.*

This clause of the city charter has been construed and sustained by the Court of Appeals in the case of *Harrison vs. The Mayor, &c.,* 1 *Gill,* 265.

It is spoken of in this case as the transfer to the city of a "salutary and essential power," and as being conferred "in terms as explicit and comprehensive as could have been used for such a purpose."

Not only has the power been conferred, but the city cannot escape the responsibility of its execution, as the word power in this connection has been held to mean duty and obligation. *Marriott vs. The Mayor, &c.*, 9 *Md.*, 160.

The ordinances of 1858, and of 1864, and the permit granted to the appellee in 1866, to erect and use a steam engine, were all passed in pursuance of the power vested in the city to prevent fires, whether that power was exercised under the clause conferring it in terms, or under the other clause of the charter, authorizing it to protect persons and property, and to *prevent* nuisances.

If this appears upon the face of these Acts of the Mayor and City Council, the particular power in pursuance of which the ordinances were passed need not be stated, as the authority will be judicially regarded as emanating from that power which would have warranted its passage. *Methodist P. E. Church vs. The Mayor, &c.*, 6 *Gill*, 391 ; 1 *Dillon on Mun. Corp.*, sec. 252.

But not only is it very clear that full power and authority over this subject has been conferred by the charter of the city upon the Mayor and City Council, but, it is contended also that the ordinances of 1858, and of 1864, prescribing the conditions upon which steam engines and boilers may be erected and used in the city, have been ratified and approved by Act of Assembly. The Act of 1872, ch. 153, after providing for the inspection of steam boilers and engines in the city, enacts in the 14th section that nothing in said Act shall conflict with the ordinance of the Mayor and City Council of Baltimore, which requires their permission for the erection of steam boilers in the city.

There is nothing in the Act which causes such a conflict, as all of its provisions are aimed at providing a system for inspecting boilers and engines then erected and in operation. When, therefore, the language above quoted was used, it must have been the intention to approve the ordinance of the Mayor and City Council referred to, as otherwise the words have no meaning. Taken in connection with the antecedent grant of power, the conclusion seems irresistible that the Mayor and City Council have jurisdiction over the subject.

Is the by-law or ordinance it has adopted in execution of this power so unreasonable as the Courts will be justified in interfering and setting it aside?

In the first place if there has been a complete transfer of this power to the city by the State, the mode and the means of its exercise are not legitimate subjects of inquiry by the Courts.

The selection of the means and the manner of exercising the power are confided to the sound discretion of the municipal authorities. *Methodist P. E. Church vs. The Mayor, &c.,* 6 *Gill,* 400; *Harrison vs. The Mayor, &c.,* 1 *Gill,* 277; *Goszler vs. Georgetown,* 6 *Wharton,* 595; 1 *Dillon on Mun. Corp., p.* 178, *sec.* 58.

In this case the Mayor and City Council have adopted the requisite legislation. The manner of applying for a permit, the subsequent publication of the notice that such application has been made, the terms and conditions upon which it will be granted, are fully set out and expressed in the ordinances referred to. One of these conditions is to remove on six months notice by the Mayor. The Mayor, therefore, when he gives the notice is not making a law, he is simply executing one already made, in the mode pointed out by it.

The ordinances in question are not to be regarded as by-laws adopted in pursuance of the implied powers incidental to the creation of the corporation, but as having been

passed in pursuance of a special grant of power by the Legislature. Such a grant adds to the powers incident to the creation of the corporation. *State, &c. vs. Mayor, &c. of Morristown,* 33 *N. J.,* 62.

If it be conceded that the Mayor and City Council has the right to regulate the use of steam machinery within the city limits, then there is nothing unlawful or unreasonable in prescribing the condition as to removal upon notice.

If it be conceded that the city has the right to prescribe the terms upon which an engine may be erected, then it follows on the other hand that it may fix the conditions of discontinuance or removal. But then it is insisted that this is not regulation, but prohibition. But this is not so, as the appellee may carry on the business elsewhere in the city, where the danger of loss by fire, or injury to persons and property would not be so great. It would be practicable for him to saw up the material necessary for his boxes at a locality where steam could be used without great risk, and then put the pieces together at his present place of business.

The ordinance does not prohibit his business; it simply denies him the right to use in its conduct, at a particular place, a motive power, which may prove specially destructive to persons and property, leaving other localities open to him. *Baker vs. Boston,* 12 *Pick.,* 194; *Harvey vs. De Woody,* 18 *Ark.,* 260; 2 *Kent's Com., top p.* 340, *and note* (11*th Ed.;*) *Slaughter House Cases,* 16 *Wal.,* 62.

Nor is it a valid objection that the proceeding is against him only, and others carrying on the same business by the same means, in equally dangerous localities, are permitted to go on without interruption or hindrance. If this Court should agree with us, it will be in order then to proceed against the others.

But, assuming that the appellee has a real grievance for which he is entitled to relief, the question occurs, has he

not mistaken his remedy? If judgment had gone against him, for the penalty sued for before the Justice of the Peace, an appeal could have been had to the Baltimore City Court, and at the trial of the case on appeal, the validity or invalidity of the ordinance under which the penalty was imposed, would necessarily have been drawn in question. It follows, therefore, that the appellee, in that Court, could have availed himself of a defence equally as valid as the defence he now sets up, and, that being the case, it has been decided in terms, that an injunction will not lie until the question as to the invasion of the ordinance has been settled in a suit at law. *Hilliard on Injunc.*, top p. 274, *ch.* 6, *sec.* 42; *West vs. The Mayor, &c.,* 10 *Paige,* 539; 1 *Dillon on Mun. Corp., sec.* 309.

*E. Duffy* and *S. Teackle Wallis,* for the appellee.

As a matter of fact the use of the steam engine by the appellee in his business was not a nuisance or a *quasi* nuisance. The business was carried on with care and safety, and it does not injure the surrounding property.

"The fears of mankind, though they be reasonable, will not create a nuisance." *Rhodes vs. Dunbar,* 57 *Penn. St. Rep.,* 289; *Carpenter vs. Cummings,* 2 *Phila.,* 76; *Wood on Nuisances,* 151, 484.

The mere declaration of the Mayor and City Council that a thing is a nuisance does not make it one. 1 *Dillon Mun. Corp., sec.* 308; *Addison on Torts,* 33, 34, 35; *Yates vs. Milwaukee,* 10 *Wal.,* 505.

Ordinances must be reasonable, impartial, not oppressive, and they may regulate, but cannot restrain trade. *Wood on Nuisances,* 773 *to* 776, *and n.* 1, *page* 774; *Pieri vs. Mayor, &c.,* 42 *Miss.,* 495; *Hayes vs. The City,* 24 *Wisc.,* 544; 1 *Dillon on Mun. Corp., sec.* 253, *&c.,* 303, *n.* 2; 7 *Paige,* 263; *Cooley on Const'l Limitations,* 201, 202; *Sedgwick on Const'l Constr.,* 402.

Here the ordinances and Act of the city are a total prohibition against the appellee, because while they forbid

them from going on in McClellan's alley, they do not provide a place where he may carry on his business elsewhere. If the appellee leave McClellan's alley, he cannot, under these ordinances, commence elsewhere in the city without the permission of the Mayor and City Council, and should the city be successful in its action against him, he would be prohibited while his neighbors are allowed to go on.

The city cannot delegate to the Mayor the power mentioned in the ordinance of 1866. 1 *Dillon on Mun. Corp.*, sec. 60; *Day vs. Green*, 4 *Cush.*, 438–9; *Thompson vs. Schermerhorn*, 2 *Seld.*, 92; *The City vs. Wehrung*, 50 *Ill.*, 28; 2 *Dillon on Mun. Corp.*, sec. 618; *Cooley on Const'l Limit.*, 404. Nor can the city, as a municipal corporation exercise any powers not expressly or by necessary implication granted to it. *St. Mary's Ind. School vs. Brown*, 45 *Md.*, 332.

The answer denies the jurisdiction in equity, upon the ground that all the matters complained of are susceptible of remedy at law.

It is obvious from the nature and effect of the ordinances in controversy, if they are applicable, that the interposition of equity is rendered absolutely indispensable in order to protect the complainant from ruin by multiplicity of suits. The ordinance of 1858, (*Revised Ord.*, 1858, *p.* 164, *sec.* 56,) which was in operation when the special resolution of 1866, was passed, and which is relied on in the answer, cannot afford any justification for the suits which are sought to be restrained. It simply provides a penalty for erecting steam engines, &c., without the previous permission of the Mayor and City Council. It imposes no penalty for the non-removal, after notice, of steam engines erected with such permission. Nor does the special resolution in favor of the appellee, of February 16th, 1866, impose such penalty or any other. *Section* 121, *of the Revised Ordinance of* 1869, *p.* 872, was accordingly relied on below by the city.

It provides for the revocation by the Mayor, upon six months' notice, of all permits granted for the erection of steam engines and boilers, and imposes a fine of $100 in case of refusal or failure to comply with the Mayor's requirements, together with a further fine of $50 for every day of continued disobedience.

The power of the Mayor extends to a removal of the engine, as well as a prohibition of its use; and in the present case it is charged in the bill and admitted in the answer, that the order of the Mayor was for removal, and that the suit before the Justice was instituted to recover the penalty for non-removal.

It must be plain that any citizen contesting the validity of the Ordinance or its application to his case, must do so at the peril of a penalty of $50 for every day occupied between the institution of the first suit and its final determination in the City Court, on appeal.

His mere retention of the engine on his premises, even though he may suspend its use, exposes him to the same legal consequences as if he continued to use it. His removal of it entails not only enormous expense and the heavy cost of setting his engine up again, even in case of his success in the litigation, but it involves the absolute destruction of his business, and the practical confiscation of his interest in the premises, as to their entire value in use.

The Ordinance moreover puts it in the power of a single public officer, with such oppressive compulsory machinery as this in his hands, to determine, by his *ipse dixit*, that the citizen shall not employ his capital or use his property in the prosecution of any business in the city of Baltimore that requires the use of steam. And it makes this power almost absolute, by the multiplicity of suits to which contest may subject the citizen, and the irreparable injury to which the litigation may in any event expose him, without the right of ultimate recourse to this tribunal.

It is respectfully submitted that the jurisdiction of equity cannot be successfully contested in such a case, in view of the well established doctrines of this Court, in controversies between individuals and public corporations. *Holland vs. Mayor, &c.*, 11 *Md.*, 197; *Boulden vs. Mayor, &c.*, 15 *Md.*, 17; *Mayor, &c. vs. Porter*, 18 *Md.*, 302; *Mayor, &c. vs. Groshon*, 30 *Md.*, 445, 446; *Mayor, &c., vs. Gill*, 31 *Md.*, 395; *Mayor, &c. vs. Magruder*, 34 *Md.*, 386; *St. Mary's Industrial School vs. Brown*, 45 *Md.*, 326; 2 *Story's Equity Jurisprudence*, sec. 955 a.

MILLER, J. delivered the opinion of the Court.

The appellee is tenant and occupant of certain premises situated on McClellan's alley, in a central business locality in the city of Baltimore, where he and his father before him had carried on the business of carpentering and box-making since the year 1853. In 1866 he applied to the Mayor and City Council for permission, which was granted, to erect and use on these premises and in the carrying on of his business, a steam engine. The resolution granting this permit contained a provision, in conformity to a City Ordinance on the subject, that the engine was "to be removed after six months' notice to that effect from the Mayor." Upon the passage of this resolution he erected and has ever since used a steam engine in his said business, but some time in the year 1873, the Mayor gave him notice to *remove* it which he refused to do. The city, then, after the expiration of the six months instituted a suit before a justice of the peace, for the penalty for *non-removal* provided in the Ordinance, and the appellee thereupon filed the bill in this case for an injunction to restrain the prosecution of that action and others which the city threatened to bring from day to day in order to enforce the removal of this engine. The Court below on final hearing ordered the injunction to be issued as prayed and made it perpetual. From this order the Mayor and City Council have appealed.

The city legislation on the subject, in force at the time this permit was granted to the appellee, was *first*, the 56th section of Ordinance No. 33, approved June 5th, 1858, by which it was provided under prescribed penalties that no person should "*erect, build or have put up* any steam saw mill or machinery, or any steam engine for any purpose whatever, or planing machine, or machinery within the limits of the city, without first obtaining the sanction of the Mayor and City Council," and *secondly*, part of the 5th section of Ordinance No. 78, approved June 9th, 1864, which provided that "*all permits* granted for steam boilers and steam engines and boilers may be *revoked*, and the same *shall be removed*, after six months' *notice from the Mayor*, and any one receiving such notice, who shall refuse or neglect to conform to the requirements of the same shall pay a fine not exceeding one hundred dollars, and a further fine not exceeding fifty dollars, for every day such refusal or neglect shall continue after the first." It is this last provision which the present case requires us more especially to consider, not only because the bill assails its legality and validity, but because the injunction complained of restrains the prosecution of suits for the penalties which it imposes for non-compliance with the *notice and order to remove* given by the Mayor. It is obvious that those who enacted this provision did not suppose it was an exercise of the power "to prevent and remove nuisances," for it would be a curious anomaly in municipal legislation on that subject, as well as a novel mode of *removing* a nuisance, to pass an Ordinance allowing a nuisance *to remain for six months* after the Mayor had determined it to be such, before any steps could be taken to enforce its removal. But further than this, a stationary steam engine is not in itself a nuisance even if erected and used in the midst of a populous city, unless it interferes with the safety or convenience of the public in the use of the streets. There is no proof in this record of any such interference, or even

that this was the ground of the Mayor's action in giving the notice. Nor was this engine used in connection with any trade or occupation which the law pronounces offensive or noxious. The business of carpentering and box-making is neither offensive to the senses nor deleterious to health. In fact the only complaints made against the engine are its liability in common with all other steam boilers, to explode, and that it is used in a business in which combustible materials are necessarily brought in dangerous proximity to the fire of its boiler, and it therefore subjects buildings and merchandise in that vicinity to increased danger from fire, raises the premiums of insurance thereon, and excites the fears of neighboring owners for the safety and security of their property, but neither one nor all of these circumstances combined, make it a nuisance. *Rhodes vs. Dunbar*, 57 *Penn. State Rep.*, 274.

But the Legislature has granted ample power of legislation upon the subject of the erection and use of steam engines within the city limits, to the Mayor and City Council of Baltimore, independent of the power "to prevent and remove nuisances." They are clothed with the power to pass Ordinances "for the prevention and extinguishment of fires," for "securing persons and property from danger or destruction, and for promoting the great interests and insuring the good government of the city," and " to pass all Ordinances necessary to give effect and operation to all the powers vested in the corporation of the city." It has been well said in reference to such general grants of power that as to the *degree of necessity* for municipal legislation on the subjects thus committed to their charge, the Mayor and City Council are the *exclusive judges*, while the selection of the means and manner (contributory to the end) of exercising the powers which they may deem requisite to the accomplishment of the objects of which they are made the guardians, is committed to their *sound discretion*. *Harrison vs. Mayor, &c.*, 1 *Gill*,

264. This discretion is very broad, but it is not absolutely and in all cases beyond judicial control. Modern decisions in other States have in some instances extended the control of the Courts over Municipal Ordinances upon the ground of their *unreasonableness*, further perhaps than the adjudications in this State would justify us in going. The cases on this subject and the conclusions to be drawn from them are well stated by Judge DILLON in his admirable work on *Municipal Corporations*, in sections 253 to 260. They will also be found collected in *Wood on Nuisances*, 774, *note* 1. While we may not be willing to adopt and follow many of these cases, and while we hold that this power of control by the Courts is one to be most cautiously exercised, we are yet of opinion there may be a case in which an Ordinance passed under grants of power like those we have cited, is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the Legislature never intended to confer the power to pass it, and to justify the Courts in interfering and setting it aside as a plain abuse of authority. In applying the doctrine of judicial control to this extent, we contravene no decisions in our own State and impose no unnecessary restraints upon the action of municipal bodies. The inquiry then arises is the Ordinance in question such as we have described? To answer this question it is necessary to consider briefly upon what it operates and what mischiefs or wrongs it is capable of inflicting. It is matter of common knowledge, as well as of proof in this case, that the use of steam engines is absolutely necessary for the successful prosecution of nearly all the various manufacturing, commercial, industrial and business enterprises which are essential to the prosperity of large cities. Great numbers of them are in constant use in the City of Baltimore for purposes so varied and numerous as to embarrass description, and they are to be found in every business locality and in all sections of the town. In fact it

may be safely affirmed that their use could not be prohibited or discontinued without the most serious impairment, if not destruction, of the prosperity and growth of the city. Now it is with these powerful and dangerous but most important and valuable aids to human industry, that this Ordinance deals, and what does it do? It does not profess to prescribe *regulations* for their construction, location, or use, nor require such precautions and safeguards to be provided by those who own and use them as are best calculated to render them less dangerous to life and property, nor does it restrain their use in box-factories and other similar establishments within certain defined limits, nor in any other way attempt to promote their safety and security without destroying their usefulness. But it commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the City of Baltimore to cease to do so, and by providing compulsory fines for every day's disobedience of such notice and order of removal, renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. But if he should not choose to do this, but only to act in particular cases, there is nothing in the Ordinance to guide or control his action. It lays down no *rules* by which its *impartial execution* can be secured or partiality and oppression prevented. It is clear that giving and enforcing these notices may, and quite likely will, bring ruin to the business of those against whom they are directed, while others from whom they are withheld may be actually benefited by what is thus done to their neighbors, and when we remember that this action or non-action may proceed from enmity or prejudice, from partizan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice

capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an Ordinance which clothes a single individual with such power, hardly falls within the *domain of law*, and we are constrained to pronounce it inoperative and void. Resting our decision as to the invalidity of this Ordinance on this ground, we shall not consider the question whether it is also void as an unauthorized delegation of a public power or trust. In the view we have taken of the case, it becomes unnecessary to express any opinion upon that question. It must also be observed that what we have declared void is only that part of the Ordinance of 1864, which gives to the Mayor the power to revoke permits for steam engines and boilers, and we are not to be understood as expressing any disapproval of the section of the Ordinance of 1858, which requires a permit from the Mayor and City Council for the erection of all such engines within the city limits. The Act of 1872, ch. 153, which was referred to by the appellants' counsel as containing a ratification and approval by the Legislature of both these Ordinances, contains no reference to the Ordinance of 1864. The section of that Act which is relied on for this ratification and approval simply provides that "nothing in this Act shall conflict with the *Ordinance* of the Mayor and City Council of Baltimore, which requires their *permission* for the *erection* of steam boilers in that city." This in plain terms refers exclusively to the Ordinance of 1858, and we by no means affirm that it constitutes a legislative ratification and approval even of that Ordinance.

As to the question of jurisdiction we have no doubt. It has been decided by this Court in too many cases to be longer open to question, that where a municipal corporation is seeking to enforce an Ordinance which is *void,* a Court of equity has jurisdiction at the suit of any person injuriously affected thereby, to stay its execution by injunc-

tion. This was distinctly announced in *Page's Case*, 34 *Md.*, 564, where it is said: "there is no doubt that where an Ordinance is void, and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby, may, and properly ought to go into a Court of equity and have the execution of the Ordinance stayed by injunction. This course of proceeding has been sanctioned and approved by this Court in numerous cases," and they refer to *Holland's Case*, 11 *Md.*, 187; *Bouldin's Case*, 15 *Md.*, 18, and *Porter's Case*, 18 *Md.*, 284. To these may be added *Groshon's Case*, 30 *Md.*, 436; *Gill's Case*, 31 *Md.*, 375; *Hazelhurst's Case*, 37 *Md.*, 220, and *St. Mary's Industrial School vs. Brown*, 45 *Md.*, 310. The averments of the bill as well as the facts established by the proof, bring the present case clearly within the principles upon which jurisdiction in equity was sustained in the cases cited.

It follows that the decree appealed from must be affirmed.

*Decree affirmed.*

(Decided 27th June, 1878.)