# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 30, 1924.

BLOECHER & SCHAAF, INC., ET AL.,
VS.
THE MAYOR AND CITY COUNCIL OF BALTIMORE, ETC.

*Alfred S. Niles* and *Joseph W. Starlings* for complainants.

*Philip B. Perlman,* City Solicitor, and *Charles C. Wallace,* Assistant City Solicitor, for respondents.

STEIN, J.—

The object of these proceedings is to have this Court decree unconstitutional and void Ordinance No. 204 of the Mayor and City Council of Baltimore, approved June 16th, 1924, commonly called the Meat Ordinance.

The plaintiffs are seventy-two citizens and taxpayers of this city, "carrying on therein the business of slaughtering animals, whose meat, and the meat products thereof, are suitable for human food, and/or for selling the same to retail dealers, and/or to consumers."

The defendants are the Mayor and City Council of Baltimore and Dr. C. Hampson Jones, its Health Commissioner.

The ordinance is said to be unconstitutional, because, among other things, it is an unwarranted and unjustified attempt to exercise the police power, in a harsh, arbitrary and an unreasonable manner; and because some of its provisions, if enforced, would deprive the plaintiffs of property without due process of law.

While many of the various provisions of the ordinance were attacked, this opinion will discuss only the following viz:

Section I, which requires all those now or hereafter engaged in slaughtering, preparing or selling meat or meat products to be licensed by the Commissioner of Animals; divides the licensees in Classes A, B and C; fixes the annual fee for Class A at $200; that for Class B at $100; and that for Class C at $5; Classes A and B are based upon the number of animals slaughtered annually; Class C includes those selling meat or meat products at retail. The ordinance prohibits the carrying on the business above named without a license, makes the so doing a misdemeanor punishable by fine and/or imprisonment, prohibits the carrying on such business in any premises which do not comply with the rules and regulations "provided" and provides that upon notice from the Commissioner of Health, such licenses *shall be revoked pending a hearing as to why said license shall not be permanently revoked.*

Section 7 (the section most discussed) provides: "That the Commis-

sioner of Health shall cause to be made by experts in sanitation or by other competent inspectors, such inspection of all slaughter houses, * * * similar establishments in which cattle * * * are slaughtered and in which meat and meat food products are prepared for sale or offered for sale or sold in the City of Baltimore as may be necessary to inform himself concerning the sanitary condition of the same and *to prescribe rules and regulations and sanitation, under which such establishment shall be maintained,* and where the sanitary condition of any such establishment is such, *in the judgment of the Commissioner of Health,* that the meat or meat food products slaughtered or prepared therein *may be* rendered unclean, unsound, unhealthful, unwholesome or otherwise unfit for human food, he shall refuse to allow said meat or food products to be labeled, marked, stamped or tagged, inspected and passed." Section 5 requires all meat not marked, *"inspected and passed"* to be marked, *"inspected and condemned"* and to be removed to a rendering establishment.

The effect of these provisions are:

1. To limit the carrying on of the businesses named in the ordinances to those licensed by the Health Commissioner.

2. To empower the Health Commissioner because of a suspected violation of rules and regulations to be prescribed by him to *suspend a license before* hearing even though (a) There be no violation, or (b) a minor violation from which no harm could result.

3. To empower the Commissioner to condemn *meat or meat products on the premises* in which licensees are carrying on a duly authorized business in slaughtering animals for food or selling meat or meat products for food, either upon the report of experts in sanitation (who are not governed by any rule prescribed by law), and where in the judgment of the Commissioner of Health the meat or food products prepared therein *may be* rendered (not must be or have been rendered) unclean, unsound, unhealthful and unwholesome or unfit for human food.

These provisions of the ordinance in question are more drastic than any heretofore attempted by the city, if lawful can be justified only by the situation existing at the date of the passage of the ordinance. The defendants demurred to the bill, and admit to be true as well pleading the following averments in bill, viz:

1. That the plaintiffs, are now and have been engaged in the businesses referred to in the ordinance for periods varying from a minimum (in one case) of ten years, to a maximum of fifty-five years; in many cases forty years; and that such businesses are intra and not interstate.

2. That since 1888 when the first regulatory law in Maryland was passed, these businesses named in the ordinance were conducted, with such conformity to existing State and municipal laws and regulations that:

A. No unwholesome meat was sold in the City of Baltimore by dealers.

B. That there was no premises in that city, wherein the business was conducted, that were dirty or badly drained, and that "in fact taking the conditions as a whole they were as sanitary as non-modern conditions would permit."

C. That the officials of the Health Department of Baltimore City practically admit; they could trace no case of illness to the eating of diseased meat; nor was there any case alleged, wherein unwholesome meat had actually been sold by any person engaged in Baltimore; in the intrastate business of slaughtering food animals and the preparation and sale of their products.

D. That this situation was brought about by the enforcement of the existing State and municipal laws.

The validity of the above provisions of the Ordinance in question depends upon whether or not, the powers above cited, conferred upon the Health Commissioner are reasonable; in view of the situation, which the admissions of the demurrer show existed, when the Ordinance was passed.

The objection to these provisions is the arbitrary discretion it gives to the Health Commissioner of Baltimore.

"The Ordinance in no way regulates or controls the power vested in the Health Commissioner. It prescribed no conditions upon which he may determine that a license granted should be suspended *before hearing* or why the meat or meat food products *may* be rendered unclean, unsound, unhealthful, unwholesome, or otherwise unfit for human food."

In discussing an Ordinance of this City, attempting to confer upon the

City of Baltimore like arbitrary powers the Court of Appeals, Briscoe, J., said:

"While the Courts, Federal and State, have been exceedingly liberal in the construction of Ordinances passed for the good government, protection of the health, peace and good order of municipalities, yet they have always held that if an ordinance *was capable* of being administered partially or unreasonably it was invalid."

"Ordinances which thus invest the City Council or Board of Trustees with a discretion which is purely arbitrary and which may be exercised in the interests of a favorite few *are unreasonable and invalid*. The Ordinance should have established a rule by which its impartial enforcement could be secured." Hagerstown vs. B. & O., 107 Md. 178 at 189.

In Baltimore vs. Radeke, 49 Md. 217 at 230, Judge Miller in speaking of an Ordinance giving wide discretionary powers to the Mayor of Baltimore City, said:

"There is nothing in the Ordinance *to guide or control his action.* It lays down no *rules* by which its *impartial execution* can be secured or partiality or *oppression prevented.* It is clear that giving or enforcing these notices may, and quite likely will bring ruin to the business of those against whom they are directed, while others from which they are withheld may be actually benefited by what is thus done to their neighbors, and when we remember that this action or non-action may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism or other improper influences, and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to everyone who gives to the subject a minute's consideration."

"In fact an Ordinance vesting an individual with such power hardly falls within the *domain of law* and we are constrained to pronounce it inoperative *and void.*"

Under the rule thus laid down, and upon the admission of the demurrer, the above provisions of the Ordinance are void; and as the sections containing them are an integral and inseparable part of the Ordinance, it is void.

While it may be that under the administration of our present efficient and impartial Commissioner of Health, the arbitrary discretion the Ordinance confers upon him would not be abused; yet the validity of the Ordinance "is to be found not by what has been done under it, but what may by its authority be done."

Johns Hopkins, etc., vs. Baltimore, 130 Md. 282 at 286.

For the above reasons I will overrule the demurrer to the bill, with fifteen days leave to answer; will allow the questions intended to be raised by demurrer to be raised in the answer, so that they may be passed upon after testimony; I will sign an order restraining the enforcement of the Ordinance pending final hearing.