**SYKES et al. v. JENNY WREN CO.** *
No. 6385.

United States Court of Appeals for the District of Columbia.

Argued April 2, 1935.

Decided May 27, 1935.

Rehearing Denied June 11, 1935.

Paul D. P. Spearman, George B. Porter, and Fanney Neyman, all of Washington, D. C., for appellants.

Paul M. Segal and George S. Smith, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from an order of the Supreme Court of the District of Columbia denying a motion made by appellants to dismiss a bill of complaint for an injunction filed by appellee against appellants. The appeal, being from an interlocutory order only, is filed by special leave of court granted under section 226 of the D. C. Code (D. C. Code 1929, T. 18, § 26).

The appellee, Jenny Wren Company, was plaintiff below, and will be named as plaintiff in this opinion. The appellants are members of the Federal Communications Commission, created and organized under the Act of June 19, 1934 (Communications Act of 1934, 48 Stat. 1064). They

will be referred to herein as the Commission.

The following allegations are contained in the bill of complaint filed by plaintiff in the lower court:

The plaintiff is a corporation owning and operating a radio broadcasting station, known by the call letters WREN, located in Leavenworth, Kan. It is licensed to operate upon a frequency of 1,220 kcs with power of 1,000 watts unlimited time. It broadcasts programs from its own studios located at different points within its service area, and also national programs furnished by the National Broadcasting Company by wire from studios in New York, Chicago, San Francisco, and elsewhere. Plaintiff's broadcasting station was established in the year 1927 and has operated continuously under federal license since that time. The station renders consistent and regular broadcasting coverage to an extensive audience in and about the cities of Leavenworth, Kan.; Lawrence, Kan.; Kansas City, Kan.; St. Joseph, Mo.; Kansas City, Mo.; and throughout the metropolitan area of the latter city. The station has developed an extensive listening public throughout this area and enjoys an invaluable goodwill therein. The operating expenses of the station are in excess of $75,000 a year, and since 1927 plaintiff has incurred an operating loss in excess of $100,000. In order to provide a portion of the operating expenses, plaintiff has contracted with various firms in its regular service area and elsewhere to sponsor programs to be broadcast by plaintiff, in which service the plaintiff's extensive goodwill is an important factor.

In addition to the plaintiff, the following licensees render broadcasting service day and night to Kansas City and the area served by plaintiff's station, to wit: Midland Broadcasting Co., KMBC; Kansas City Star Co., WDAF; the WLBF Broadcasting Co., WLBF; Wilson Duncan, KWKC.

The advertising revenue, high-grade program material, and listening audience in and about the Kansas City area are limited, and plaintiff is in severe and active competition with each of the preceding licensees, and they are in competition with each other and the plaintiff for program material, for the attention of the available listening audience and for commercial revenue. By reason of this competition plaintiff is not able to realize any profit and its revenues for advertising are barely sufficient to enable it to maintain operation in accordance with the standards required by the defendants.

In addition to the plaintiff and the other licensees, the Commission has authorized WHB Broadcasting Company, a Missouri corporation located at Kansas City, Mo., to operate a broadcasting station known by the call letters WHB, with power of 500 watts at a frequency of 860 kcs. Station WHB is in active competition with plaintiff for material, talent, and commercial revenues. Heretofore, station WHB has been restricted by the Commission to daytime operation only. However, on April 13, 1934, station WHB filed with the Commission an application for modification of its existing license so as to permit it to operate evening hours in addition to its present daytime schedule. This application bears the form and title of an "application for radio broadcast station special experimental authorization," but is in truth and fact an application for regular authority to permanently and regularly operate evening hours so far as the Commission is authorized by law to permit the same.

Upon an examination of the application of WHB, the Commission on July 24, 1934, published an order for a public hearing to be held on the application on August 27, 1934. This order was issued without notice to or service upon the plaintiff, but came to the plaintiff's knowledge on August 2, 1934.

Paragraph 59 of the rules and regulations of the defendants provides as follows: "Any governmental department or officer, any person, firm, company, or corporation, or any State or political subdivision thereof may, at any time, more than 10 days prior to the date of any hearing, file with the Commission a petition to intervene therein in support of, or in opposition to, any application designated for hearing. If the petition discloses a substantial interest in the subject matter of the hearing the Commission will grant the same and permit the petitioner to be heard at such hearing subject to regulations hereinafter imposed."

On August 4, 1934, plaintiff filed with the Commission a petition setting out the foregoing facts and requesting permission to intervene in the aforesaid application of WHB. In the petition the plaintiff alleged among other things that WHB

Broadcasting Company intended to operate during the additional hours requested by it upon a regular basis, and that the operation in the evening hours, as requested in its application, will result in active competition with the plaintiff as to the distribution of audience of listeners, advertising revenue, and available material, talent, and sponsors; that such competition will reduce the quality and extent of the service now rendered in the public interest, convenience, and necessity, of the people of Kansas City. Wherefore, plaintiff prayed that the Commission permit it to intervene in the hearing of the application of WHB in accordance with the published regulations aforesaid, and also that the outstanding notice of the hearing be amended so as to add the following specifications of the issue: "To determine what if any experiments are proposed to be conducted by the applicant in accordance with the rules and regulations of the Commission. To determine the effect of the proposed operation upon the public service rendered by existing stations serving the Kansas City area."

The Commission on August 14, 1934, denied the petition of plaintiff to intervene as requested by it.

Thereupon, on August 17, 1934, the plaintiff brought its present case in the Supreme Court of the District of Columbia, by filing a bill in equity setting out the foregoing facts which it alleged to be true, and stating that if plaintiff be permitted to appear at the hearing to be held by the commission on the application of WHB on August 27, 1934, plaintiff would be able to show that the application of WHB is in fact intended to be one for regular license and authority to operate evening hours on a regular basis in active commercial competition with the plaintiff; that such competition will depreciate plaintiff's revenue to the point that the operation of its broadcasting station will be at a loss with consequent depreciation of its service to the public and endangering its right to receive continued renewal of license. Plaintiff also alleged that the present broadcasting service to the Kansas City area is adequate; that additional inroads into the plaintiff's listening evening audience and material and talent will adversely affect the public service.

Plaintiff alleged in its bill of complaint that the Commission threatens to conduct the public hearing on August 27, 1934, upon the application of WHB above described, without the participation of plaintiff, and threatens at such hearing to deny to the plaintiff any opportunity to attend or cross-examine witnesses or to adduce testimony, and to deny to the plaintiff any hearing in regard to the subject-matter, and to act on the application of WHB without any notice or hearing to the plaintiff. Plaintiff also alleged that the holding of the proposed hearing on August 27, 1934, without the participation of plaintiff as a party would cause the plaintiff irreparable damage and injury, and would deprive plaintiff of its property without due process of law contrary to the Fifth Amendment of the Constitution of the United States.

Wherefore, plaintiff prayed that the Commission be perpetually enjoined from granting any application authorizing any additional operating hours to radio broadcasting station WHB or any other such station rendering service in the Kansas City area or in the area regularly served by plaintiff's radio station WREN, or any part thereof, and from authorizing any other new or additional radio-broadcasting service to such area or any part thereof without prior notice and hearing to the plaintiff and from holding any hearing or proceeding upon any such application by which any testimony is taken or facts elicited without an opportunity for the plaintiff to participate, cross-examine witnesses, and adduce evidence after ample opportunity and time for preparation, and that pending determination of this suit the court may grant and issue its preliminary injunction forbidding all actions on the part of the Commission as to which a final injunction is herein prayed.

Thereupon the Commission filed a motion in the lower court to dismiss the plaintiff's bill of complaint upon the following ground, among others: That if plaintiff has such an interest as will entitle it to the relief prayed for, then if and when the Commission decides the matter complained of adversely to plaintiff's interest, it has a plain, speedy, and adequate remedy at law under section 402 (b) of the Communications Act of 1934, supra (47 USCA § 402 (b), which provides for an appeal from decisions of the Commission to the United States Court of Appeals for the District of Columbia.

The lower court upon consideration denied the motion to dismiss the bill, and likewise denied the prayer of the plaintiff

732

for a preliminary injunction. The present special appeal was then allowed by this court.

██ We think that the lower court erred in overruling the motion of the Commission to dismiss the plaintiff's bill. There are two grounds upon which we base this conclusion.

First, the remedy sought by the plaintiff is by way of injunction; it is the established rule that a proceeding in equity for an injunction cannot be maintained where the complaining party has a plain, adequate, and complete remedy at law for the right sued upon. The plaintiff below was provided with such a remedy by way of appeal to this court. By section 402 (b) of the Communications Act of 1934, supra, it is provided that an appeal may be taken from the decisions of the Commission to this court by any applicant for a construction permit for a radio station, or for modification of an existing radio station license, whose application is refused by the Commission, and "by any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application." The act also contains the provision: "That the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious. The court's judgment shall be final, subject, however, to review by the Supreme Court of the United States upon writ of certiorari on petition therefor under section 240 of the Judicial Code, as amended [section 347 of Title 28] by appellant, by the Commission, or by any interested party intervening in the appeal."

The foregoing provisions of the statute furnish a method of appeal for the plaintiff from the decision of the Commission in this case. The proceeding before the Commission was an application made by an applicant "for modification of an existing radio station license." The plaintiff claimed to be a "person" who was aggrieved and whose interests would be adversely affected by a decision of the Commission granting the application. It is true that the plaintiff was not given formal notice of the filing of the application by WHB for modification of its license; nevertheless, plaintiff had actual knowledge thereof, and on August 4, 1934, filed its objection to the allowance of the application; and on August 14, 1934, its objection was officially denied by the Commission. This was a decision by the Commission in the proceeding, and plaintiff therefore was entitled under the statute to appeal to this court if the Commission finally decided to grant the application.

██ Secondly, we think that the remedy by appeal provided by section 402 (b) of the Communications Act of 1934, supra, was the exclusive remedy provided by statute for the review of plaintiff's complaint. We think accordingly that the lower court was without jurisdiction over the cause of action asserted by plaintiff in the case brought by it for an injunction. White v. Federal Radio Commission (D. C.) 29 F. (2d) 113; American Bond & Mortgage Company v. United States (C. C. A.) 52 F.(2d) 318; Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co., 289 U. S. 266, 53 S. Ct. 627, 636, 77 L. Ed. 1166, 89 A. L. R. 406.

The decision of the lower court denying the motion of the Commission to dismiss the plaintiff's bill of complaint is reversed and the cause is remanded, with instructions to sustain the motion and dismiss the bill.

GRONER, Associate Justice (dissenting).

I am unable to concur with the court in its disposition of this case.

The ground upon which relief is denied is that petitioner (appellee) has a plain, adequate, and complete remedy at law, which the opinion points out is the appeal to this court provided in section 402 (b) of the Communications Act of 1934, and that this right of appeal is exclusive.

With both these propositions I am in disagreement. Petitioner filed in the lower court its bill of complaint, in which it showed that it is a licensed broadcasting station (WREN) located in Lawrence, Kan., and that it has been in continuous operation since 1927; that its station renders consistent and regular broadcasting coverage to an extensive audience in and about the cities of Lawrence, Leavenworth, Kansas City, and St. Joseph; that there are four other full-time stations serving the same area which are in severe and active competition with each other and with petitioner, with the result that petitioner, though expending on operating charges sums in excess of $75,000 annually, is as

yet unable to operate at a profit; that in April, 1934, a daytime station (WHB) operating in the same area filed a request for authority to operate evening hours in addition to its then restricted schedule; that the Commission, being unable to determine that the granting of a permit would serve public interest, convenience, and necessity, directed that the application be set down for public hearing; that petitioner filed with the Commission its petition to intervene, alleging that if the authority requested by WHB should be granted, the effect would be to reduce the quality and extent of the service now rendered in the Kansas City, Lawrence, Leavenworth, and St. Joseph district, and would seriously and irreparably injure petitioner, in that it would result in a further distribution of the audience of listeners, the advertising revenues, the available program material and talent, and would make petitioner's present broadcasting service financially impossible. In short, petitioner alleged that the area in question is already adequately and fully supplied with radio broadcasting service, and that the effect of introducing another nighttime station would be to vitally affect its service, revenue, and resources, and thereby adversely affect public interest, convenience, and necessity.

The Commission, although stating no reasons for its action, refused to allow petitioner to intervene and, the bill alleges, threatened to proceed to a hearing on the application of WHB without allowing petitioner to be heard in opposition thereto.

In the circumstances, which I shall detail briefly, I am of opinion that this action of the Commission was arbitrary and in direct conflict with its own rules and regulations.

Paragraph 59 of the rules of the Commission provides: "Any governmental department or officer, any person, firm, company, or corporation, or any State or political subdivision thereof may, at any time, more than 10 days prior to the date of any hearing, file with the Commission a petition to intervene therein in support of or in opposition to any application designated for hearing. If the petition discloses a substantial interest in the subject matter of the hearing the Commission will grant the same and permit the petitioner to be heard at such hearing subject to regulations hereinafter imposed."

To the bill filed by the petitioner in the court below, the Commission filed a motion to dismiss.

In the brief and in the argument in this court, the Commission justifies its refusal to permit intervention on the broad ground that petitioner has no legal interest in the application of any other broadcasting station for a license and, particularly, that it has no legal interest based on a loss of its own revenues, and this, because no broadcasting station has a property right in its franchise or permit with respect to its audience and advertising clientele. In addition to this, the Commission says that even if petitioner has an interest, it is permitted by section 402 (b) of the act to appeal to this court from the order of the Commission in the event the application of WHB is granted.

I think neither of these grounds is sufficient, and that, in refusing to allow intervention, the Commission misinterpreted its own rules and misunderstood the law with relation to petitioner's rights.

I am not unmindful of the broad powers which Congress has granted to the Commission, nor that these powers include the right to grant or refuse licenses or renewals of licenses, to increase or decrease station power, and to delete existing stations if it be found necessary to produce an equitable result. That much was decided by the Supreme Court in Federal Radio Commission v. Nelson Brothers, etc., Co., 289 U. S. 266, page 282, 53 S. Ct. 627, 636, 77 L. Ed. 1166, 89 A. L. R. 406, but in the same opinion the Supreme Court said that Congress did not in the delegation of its powers authorize the Commission to act arbitrarily or capriciously, and to that I may add, if it had, it would have been an invalid grant of power. Mayor, etc., of City of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239. Broad as is the power granted, it is not unlimited; and I have no doubt that, in any proper case in which it is shown that the threatened action of the Commission is arbitrary, the courts of the District of Columbia, in the exercise of their equity jurisdiction, at the instance of the person injured, have authority to enjoin as a plain abuse of power.

And certainly no action can be more arbitrary, more oppressive, or more unjust than that which condemns before it hears.

This general principle the Commission itself recognizes in its rules, for, as has

been noticed, provision is there specifically made for the right of intervention on the part of any person whose petition shows a substantial interest in the subject-matter under investigation.

The inquiry, therefore, is whether petitioner has an unquestionable interest in the granting or refusal by the Commission of the application of WHB to share with it the neighborhood broadcasting field. If on the admitted facts it has, its right to be heard is not a matter of discretion. The answer, as I view it, depends upon whether the granting of the application would so seriously diminish the profits of its going business as to injure or destroy a privilege which it now enjoys. In other words, if the effect of granting the new application will be to put it out of business or render it incapable of continuing to perform a public service, it would seem to me that it cannot be denied it has an interest, a legal interest, in the subject-matter of the hearing. In its petition of intervention it sets forth sufficient facts to sustain this proposition, but the Commission refused it a hearing because the Commission thought that its permit to broadcast, being merely a license, constituted no "property right," and hence no property interest of which it could complain of the loss or destruction; but this is too narrow a view. Granting that those who operate broadcasting stations do so subject to the Commission's power of regulation, this power is not an unlimited power; and the Commission's licensees, who on the faith of the license have invested money and established a goodwill, thereafter undoubtedly have rights which, though they may be revoked in the public interest, nevertheless may not be arbitrarily or capriciously destroyed.

The Supreme Court, in the Nelson Brothers Case, supra, distinctly said that in the distribution and adjustment of facilities, "the equities of existing stations undoubtedly demand consideration." "The equities" of which the court speaks are in the nature of property rights which, at the least, may not be taken away without notice and hearing. If it were otherwise, the millions of dollars invested in radio broadcasting stations would be wholly subject to the caprice or favor of the regulatory body. Such a grant of power would be so clearly unreasonable, so oppressive, and so partial as to make it unthinkable, without more, that the Congress ever intended to grant it. Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220.

Again, in its petition of intervention, petitioner offered to show that the broadcasting facilities in the neighborhood in which the new applicant proposed to operate were adequate, and that the effect of admitting further competition into that field would result in harm to the public. It proposed, therefore, if permitted to do so, to show that there would result from the establishment of a new station such active competition for business as would destroy its ability and the ability of others in the same field to operate in the public interest. I think this, too, was a subject which the Commission, under the statute creating it, was bound to notice. The basic principle of congressional control is public interest, convenience, and necessity, and since the passage of the act the policy of the Commission has been to accomplish this object through private enterprise. The Commission, in the preamble to its regulations, says: "This system is one which is based entirely upon the use of radio broadcasting stations for advertising purposes. It is a highly competitive system. * * *" In these circumstances it may be said, somewhat as was said by Mr. Justice Brandeis of a like condition in the transportation field, the act recognizes the preservation of the earning capacity, and conservation of the financial resources, of the individual broadcasting station as a matter of national concern, for the reason that the property employed must be permitted to earn a reasonable return or the system will break down; thus indicating, as it seems to me, an identical or reciprocal interest between the owner and the public, in which it is the right of either to see that competition between stations is not carried to the point of destruction (Texas & Pac. Ry. v. Gulf, etc., Ry., 270 U. S. 266, 46 S. Ct. 263, 70 L. Ed. 578).

When, therefore, WHB made its application to the Commission for nighttime service, and the Commission agreed to a hearing, the primary issue involved determining whether the present service was adequate and, if it was, the probable effect of admitting competition into a field adequately served; and this involved determining the financial effect upon those now rendering public service in that field. In the determination of these questions petitioner had a vital interest, and, if the Commission's rule to which I have already referred means anything, it means that such

an interest may be represented at the hearing and present evidence and be heard before the determination is made. Therefore, to say, as the opinion in this case says, that petitioner has an adequate remedy by appeal to this court, after the Commission has made its final decision on the application of WHB, is, it seems to me, wholly without point. It is the equivalent of locking the stable door after the horse is gone. Section 402 (e) of the Communications Act of 1934 (47 USCA § 402 (e), providing for appeals to this court, limits this court's consideration to questions of law and provides that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive; and we have held time and again that the court is bound by the Commission's fact findings. To contend, therefore, that petitioner has an adequate remedy, when it is bound by facts found without its intervention and without an opportunity on its part to be heard, is to effectively foreclose its rights before they are known and render an appeal to this court, on a record to which it is a stranger, wholly bootless. True enough, it may be the right of the Commission to determine the "equities" which shall control, but to command approval it must act judicially, must hear and weigh the evidence, and exercise its powers fairly and equitably; and this it cannot do by closing its ears to the proffer of testimony in behalf of one whose legal rights are put in jeopardy and who seasonably applies for a hearing. "Judgment ceases to be judicial if there is condemnation in advance of trial." Escoe v. Zerbst, 55 S. Ct. 818, 820, 79 L. Ed. ——, decided May 20, 1935.

HITZ, Associate Justice, concurs in this dissent.

HITZ, Associate Justice, dissenting.