**SUNSHINE BROADCASTING CO. v. FLY et al., as Federal Communications Commission.**

**Civ. No. 4638.**

District Court of the United States for the District of Columbia.

June 15, 1940.

Horace L. Lohnes and H. L. McCormick, both of Washington, D. C., for plaintiff.

William J. Dempsey, Gen. Counsel, William C. Koplovitz, Asst. Gen. Counsel, and Benedict P. Cottone, Counsel, Federal Communications Commission, all of Washington, D. C., for defendants.

MORRIS, Justice.

The plaintiff is the owner and licensee of a radio broadcasting station known by the call letters KTSA, in San Antonio, Texas, which station was first licensed on May 9, 1922, and has been in continuous operation since that time. It operates on a frequency of 550 kilocycles with the power of one kilowatt night and five kilowatts day, unlimited time. Among other radio broadcasting stations licensed and operating in San Antonio and vicinity is one, known by the call letters KMAC, owned and operated by W. W. McAllister and Howard W. Davis, doing business as the Walmac Company. The station KMAC shares time with radio broadcasting station KOMO and operates on a frequency of 1370 kilocycles with the power of 100 watts night and 250 watts day. On December 1, 1938, the owners of the radio broadcasting

station KMAC filed with the Federal Communications Commission an application for a construction permit, seeking authority to operate on a frequency of 930 kilocycles with a power of one kilowatt day and night, unlimited time. The Commission designated this application for a hearing to determine whether the interests of any other station may be adversely affected by reason of interference, particularly stations WBRC, located at Birmingham, Alabama, KMA, located at Shenandoah, Iowa, KPRC, located at Houston, Texas, and two Mexican stations XEBH and XENT, and also, because of the pendency of other applications with which conflict may be had by reason of interference, namely KPRC, WBRC, KMA, above mentioned, WDBJ, located at Roanoke, Virginia, KROW, located at Oakland, California, and WSBT, located at South Bend, Indiana. The hearing was at first set for November 14, 1939. Prior to that date, as disclosed by an amendment to the complaint herein, the owners of station KMAC made certain amendments, by leave of the Commission, in its application and, as amended, the application has been taken off the hearing docket, and is not now designated for a hearing. The plaintiff, on August 18, 1939, filed with the Commission a petition to intervene in the hearing on the application of station KMAC and a motion to enlarge the issues so as to permit plaintiff to introduce evidence as to the need for the additional facilities in that area, and to show that the granting of the application would result in another regional station in the same community competing directly with plaintiff's station for advertising business, program material and talent, and also to show that a further distribution of the available advertising business, program material and talent in the community would adversely affect the economic interests of plaintiff's station and result in a necessary reduction in the quality and extent of the service now rendered to the community. On October 2, 1939, Commissioner Payne, one of the defendants, entered an order denying the petition of the plaintiff to intervene in the hearing on the application of station KMAC, and also denying the motion of plaintiff to enlarge the issues to be heard in connection with that application. On October 10, 1939, exceptions being filed to that order, the Commission entered an order affirming the actions of Commissioner Payne. Thereafter the plaintiff instituted these proceedings.

It is alleged that the plaintiff, as the holder of a license, issued by the Commission, has an equitable right to the continued operation of station KTSA; that the community is not sufficiently large, or the business and commercial activities sufficiently numerous or strong to afford adequate support for another regional station; and the plaintiff further alleges substantially the matters urged in its motion, above referred to, filed with the Commission to enlarge the issues. Plaintiff claims, by reason of these facts, that it is entitled to be heard by the Commission before the application of radio broadcasting station KMAC is acted upon; that the plaintiff has no remedy other than this suit, as the Communications Act of 1934 permits a review by the United States Court of Appeals for the District of Columbia only from actions of the Commission which grant or refuse applications for construction permits or licenses, for renewal of licenses, or for modification of licenses, and, therefore, the order of the Commission denying the plaintiff the right to participate in the proposed hearing on the application of station KMAC and to enlarge the issues is not subject to appeal under this statute. Upon these grounds the plaintiff asks this Court for a temporary injunction, later to be made permanent, enjoining the defendants from granting without a hearing the amended application of station KMAC, or from holding a hearing thereon until and unless the plaintiff be permitted to participate in said hearing, by offering evidence and cross-examining witnesses upon issues bearing upon the need for additional service in the community and the adverse economic effects upon plaintiff's station KTSA, its sources of revenue, its programs and talent material, and the abilities of the community of San Antonio to support an additional competing radio station. To the complaint, as amended, the defendants have filed a motion to dismiss.

The Communications Act of 1934, Sec. 307(a), 47 U.S.C.A. provides in substance that the Commission, if public convenience, interest or necessity will be served thereby, subject to the limitation of the Act, shall grant to any applicant therefor a station license. The Act further provides, Sec. 309(a) in substance that the Commission shall examine applications for licenses and,

if the Commission shall determine that public interest, convenience or necessity would be served by the granting thereof, it shall authorize the same, thus making a hearing unnecessary in such cases. In the event the Commission, upon examination of the application, does not reach such decision with respect thereto, it shall notify the applicant, and it shall fix and give notice of the time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe. There is no statutory provision with respect to the right of any party, other than the applicant, to intervene or to be heard with respect to such application. The rules and regulations adopted by the Commission, with respect to intervention, provide as follows: "Sec. 1.102. Intervention. Petitions for intervention must set forth the grounds of the proposed intervention, the position and interest of the petitioner in the proceedings, the facts on which the petitioner bases his claim that his intervention will be in the public interest and must be subscribed or verified in accordance with Sec. 1.122. The granting of a petition to intervene shall have the effect of permitting intervention before the Commission but shall not be considered as recognition of any legal or equitable right or interest in the proceeding. The granting of such petition shall not have the effect of changing or enlarging the issues which shall be those specified in the Commission's notice of hearing unless on motion the Commission shall amend the same." The Act, as amended, does provide, Sec. 402(b), Title 47 U.S.C.A., that an appeal may be taken from decisions of the Commission to the United States Court of Appeals for the District of Columbia by any of the following persons:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application.

"(3) By any radio operator whose license has been suspended by the Commission "

Unless plaintiff states a case which shows that its legal or equitable rights have been invaded or threatened, it cannot ask this Court to use its process to control the action of the Commission, to whom Congress has committed the task of granting or refusing applications for radio station construction permits and licenses, and to whom is given a discretion in such determination and in the conduct of hearings with respect thereto. And, even then, where a statutory method of judicial review is provided, this Court should not employ its power as a court of equity unless irreparable injury would occur before resort could be had to such statutory method. It is necessary, therefore, to determine whether or not the plaintiff has disclosed any legal or equitable right which the granting of the application of radio station KMAC would invade. This question is, I consider, answered in the negative by the Supreme Court of the United States in the case of Federal Communications Commission v. Sanders Brothers Radio Station, 60 S.Ct. 693, 84 L.Ed. —, decided March 25, 1940. In that case the critical question was whether or not resulting economic injury to an existing station, occasioned by almost identically the same factors urged by the plaintiff in the instant case, is an element which the Federal Communications Commission must weigh, and as to which it must make findings in passing on an application for a broadcasting license. (The application involved was for a construction permit as in the instant case. As the construction of a radio broadcasting station could not affect an existing broadcasting station unless licensed to operate, the opinion naturally dealt with the considerations which should weigh in the granting of an application for a license to operate.) In that case, the Supreme Court said that, in and of itself, and apart from considerations of public convenience, interest or necessity, resulting economic injury to an existing broadcasting station is not such an element. There, as here, there was no contention that the applicant's station would interfere with the radio frequency of the existing station. If, then, the economic injury to an existing station is not a separate and independent element to be taken into consideration by the Commission in determining whether it shall grant or withhold a license, the plaintiff cannot have the relief which this Court is here asked to give.

 It may well be that the licensee of an existing station could furnish information and assistance to the Commission without which the Commission would be unable to properly determine whether the granting of an application, such as here involved, would serve the public convenience, interest or necessity. And it may also be that such information and assistance in certain cases could best be secured by the participation of such licensee as a party. That is a matter, however, which rests in the discretion of the Commission, Federal Communications Commission v. Pottsville Broadcasting Co., 309 U. S. 134, 60 S.Ct. 437, 84 L.Ed. —, decided by the Supreme Court January 29, 1940. An abuse of such discretion, amounting to an error of law, could be corrected only by the statutory method of appeal from a decision granting or refusing an application. That Congress has given to the licensee of an existing broadcasting station a right of appeal from the granting of an application to a proposed rival station by Section 402(b) (2), above set forth, is explicitly settled by the Supreme Court in the Sanders Brothers case, and it has been determined by the Court of Appeals for the District of Columbia that a licensee has such right of appeal under that section of the Communications Act, although petition to intervene has been denied by the Commission, Sykes v. Jenny Wren Co., 64 App.D.C. 379, 78 F.2d 729, 104 A.L.R. 864, certiorari denied, 296 U.S. 624, 56 S.Ct. 147, 80 L.Ed. 443. The plaintiff urges that the Jenny Wren case has been overruled by the Supreme Court in Utah Fuel Co. et al. v. National Bituminous Coal Co. et al., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483. In the light of what was said in the Sanders Brothers case, there is substantial difference between the interest which the licensee of an existing broadcasting station has in the granting of an application to a rival station and the right which the Utah Fuel Company had in confidential information furnished by it to the National Bituminous Coal Commission. Furthermore, there is not here made to appear any irreparable injury which would result by a resort to the method of judicial review provided by the statute, while in the Utah Fuel Co. case, the injury complained of would have resulted before such resort could be had. And, finally, that part of the decision in the Utah Fuel Co. case, upon which the plaintiff here relies, dealt with the question of jurisdiction, and it did not determine that the relief sought should be granted in the exercise of that jurisdiction. I do not consider, therefore, that the Jenny Wren case has lost any of its authority for the conclusion that the equitable relief here sought should be denied.

For the reasons above stated, the motion to dismiss the complaint is granted.