**ALABAMA NURSING HOME ASSOCIATION, an unincorporated association, et al., Plaintiffs,**

v.

**Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare, et al., Defendants.**

Civ. A. No. 77–52–N.

United States District Court, M. D. Alabama, N. D.

July 12, 1977.

Stanley B. Sikes, William J. Bryant, and John W. Kelly, III, Jackson & Sikes, Selma, Ala., and Thomas C. Fox, George R. Clark, and Joel M. Hamme, Pierson, Ball & Dowd, Washington, D. C., for plaintiffs.

Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., M. D. Ala., Montgomery, Ala., and Sondra D. Stigen, Dept. of Justice, Washington, D. C., for the federal defendants.

William K. Martin, Henry C. Barnett, and Herman H. Hamilton, Jr., of Capell, Howard, Knabe & Cobbs, Montgomery, Ala., Sp. Asst. Attys. Gen., for defendant Robert H. Holzworth.

William J. Baxley, Atty. Gen., and James T. Pons, Asst. Atty. Gen., Montgomery, Ala., for other state defendants.

JOHNSON, Chief Judge.

## MEMORANDUM OPINION

This is an action contesting the validity of the current payment rates that the State of Alabama is using to reimburse nursing homes under the Medicaid Program. Jurisdiction in this matter is pursuant to 28 U.S.C. §§ 1331 and 2201 and 5 U.S.C. § 702. This action was filed in this Court February 1, 1977.[1] The case is now submitted upon defendant Holzworth's motion for dismissal, said motion being considered as a motion for summary judgment; the motion of the federal defendants for summary judgment; and plaintiffs' motion for summary judgment. This Court, in accordance with Rule

1. By order of March 3, 1977, it was consolidated with *Moody, et al. v. Holzworth, et al.*, Civil Action No. 76–349–N.

52 of the Federal Rules of Civil Procedure, incorporates in this memorandum opinion the appropriate findings of fact and conclusions of law.

Plaintiff Alabama Nursing Home Association is an unincorporated association existing under the laws of Alabama, which seeks to represent the interest of its members in this matter. The other named plaintiffs are individual skilled nursing homes and intermediate care facilities located in Alabama. The plaintiffs bring this action for themselves and also seek to bring it on behalf of the class of nursing homes in the state which are similarly situated. The propriety of this case proceeding as a class action has not been challenged by any party, and such an action will be permitted.

Defendants may be grouped into two categories: federal and state. The federal defendants are Joseph Califano, Jr., the Secretary of the Department of Health, Education and Welfare (HEW hereinafter), who is charged with administering the Medicaid Program for the federal government, and the Department itself. They will be treated together. The state defendants are various state officials involved in administering Medicaid for the state. They include the Director of the Alabama Medical Services Administration, Robert D. Holzworth, and the Secretary and members of the State Board of Health (State Committee of Public Health).[2]

Under the Medicaid Program, payments are made by the designated state agency to the institutions which provide medical services to qualified beneficiaries. These providers include, in some cases, nursing homes. The money for the payments comes from both state and federal sources and is to be paid in accordance with a plan which conforms to the requirements of the Social Security Act and is approved by the Secretary of HEW. Public Law 92–603, § 249 (hereinafter Section 249), 42 U.S.C. § 1396a(a)(13)(E), requires that plans provide for reimbursement to skilled nursing homes and intermediate care facilities "on a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary." The statute says that this requirement shall be "effective July 1, 1976." However, the implementing regulations promulgated by HEW set an effective date of January 1, 1978. 45 C.F.R. § 250.30(a)(3)(iv). HEW's explanation for this discrepancy was that it had been extremely slow in publishing the implementing regulations and it feared that the delay might have prevented some states from meeting the deadline in the statute.[3] Therefore, HEW set a later effective date to prevent the states from being penalized, when the fault lay with the Department.

The State of Alabama has the present ability to calculate nursing home reimburse-

---

**2.** The full list of state defendants is: Defendant Ira L. Myers, M.D., the Secretary of the State of Alabama Committee of Public Health (also known as the State Board of Health of Alabama) and the State Health Officer; Defendant Robert D. Holzworth, M.D., the Director of the Alabama Medical Services Administration (M.S.A.), the operative arm of the State Committee of Public Health to which Medicaid administrative functions are delegated; Defendant Leon C. Hamrick, M.D., the Chairman of the State Committee of Public Health; and Defendants E. W. Branyon, M.D.; Jasper D. Bush, Jr., M.D.; A. Derrill Crowe, M.D.; R. R. McBryde, M.D.; Carl A. Grote, Jr., M.D.; Ronald E. Henderson, M.D.; C. A. Lightcap, M.D.; John Hall Nelson, M.D.; Charles L. Rutherford, Jr., M.D.; Aubrey E. Terry, M.D.; Kenneth C. Yohn, M.D.; Walter L. Allen, III, D.M.D.;

James A. Pittman, Jr., M.D.; Charles Aderholt; and Nelson B. King, D.V.M., who are presently serving as members of the State Committee of Public Health.

**3.** At 41 Federal Register 27300–27308, HEW stated:

> The Department does not intend that States should be penalized for the Department's delay in publishing final regulations. Therefore, the regulations require that the initial cost-reporting period begin no later than January 1, 1977, and that States set reasonable cost-related rates no later than January 1, 1978, on the basis of cost data submitted by providers.

ment rates on a cost related basis within the meaning of the statute. It has in fact been making such calculations for some time. Payment is being made on this basis up to an absolute ceiling of $21.50 per patient, per day, for skilled nursing homes and $19.35 for intermediate care facilities. This ceiling is the center of the present controversy. It is undisputed that it is not cost related within the meaning of Section 249. Defendant Robert D. Holzworth, Director of the Medical Services Administration, recognized this in a September 14, 1976, memorandum to the State Board of Health and recommended that it be eliminated. In its place, Holzworth proposed a ceiling placed at the mean of all rates plus a one half standard deviation. The Board declined to pass on this recommendation and apparently put off consideration of the matter until December, 1977. According to Holzworth, at least one consideration which led to this was the HEW regulation giving the states until 1978 to comply with Section 249. Plaintiffs seek declaratory and injunctive relief, attacking the HEW regulation, 45 C.F.R. § 250.30(a)(3)(iv), and the current Alabama reimbursement rates to the extent that the present ceiling affects them.

HEW challenges the plaintiffs' standing to sue in this case, contending that any possibility of financial gain by the nursing homes is purely speculative. Assuming that the current ceilings are invalid, as it must when attacking standing to challenge them, HEW nevertheless points to the ceilings based on the mean that Holzworth proposed to the State Board of Health. HEW argues that, even if use of the present ceilings is enjoined, Alabama still might be able to impose the ceilings based on the mean.[4]

It has not been conclusively demonstrated, the Department says, that the nursing homes would be better off with the pro-

posed ceilings than they are under the current limitations.[5] Consequently, it is contended, no injury in fact has been shown.

■ There must be an injury in fact to support standing. *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). This injury must be "real and immediate," not conjectural and hypothetical. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *S. v. D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). And "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 44, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976). However, that is not the case here. Section 249 mandates that any state Medicaid plan provide for payment to nursing homes on a reasonable cost related basis. Where a state plan is not in conformity with the Social Security Act, those individuals most directly affected by the administration of the program may seek judicial enforcement of the statute's requirements. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Thus, the nursing homes have a right to have their payments determined on a cost related basis, and it is the denial of this right which gives rise to standing. It is unnecessary to look behind the right, and see if it can definitely be shown that the obtaining of the right will ultimately be of financial benefit. In *Rosado v. Wyman, supra,* recipients of welfare payments brought an action to compel New York to administer its

---

4. A ceiling based on a mean average of allowable costs presumably is cost related. Plaintiffs challenge its reasonableness but, due to the result reached here, it is unnecessary for the Court to consider this point.

5. Such calculations are presently impossible to make with mathematical certainty because the state has not committed itself to a particular formula.

Aid to Families With Dependent Children program in conformity with the Social Security Act. The Supreme Court entertained the action and held that the state must either comply with the statute or withdraw from the program. As New York could have withdrawn, the plaintiffs might have ended up with no financial benefits at all. But the action was nonetheless permitted. In fact, standing to sue was not even challenged. An analogy may also be drawn to a situation where a person contends that he has been deprived of property without procedural due process. In such cases it is unnecessary for the plaintiff to show that conformity with procedural due process would change the result. Thus the nursing homes have standing to assert their right to receive payments calculated on a cost related basis, without having to show that obtaining this right would definitely result in monetary gain. That plaintiffs have a right and defendants are depriving them of it is sufficient.

Viewed another way, this case is an attack on the present ceiling on rates. If the present ceiling were lifted, and thus all payments were made on a cost related basis, approximately one hundred nursing homes would benefit financially. It is true that further state action, such as the imposition of a new ceiling based on the mean, might eliminate any gains that the nursing homes would make from the invalidation of the present ceiling. But in *Rosado v. Wyman, supra,* possible future state action in the form of state withdrawal from the Aid to Families With Dependent Children program would have eliminated any gains that the plaintiffs would have made from winning the case. The plaintiffs were able to bring an action in *Rosado,* and they may do so here.

HEW's argument on standing, and the above analysis, is premised on the assumption that a new ceiling based on the mean could be lower than or equal to the present ceiling. In fact, the ceiling that Dr. Holzworth proposed to the State Board of Health September 14, 1976, was higher than the present ceiling. As the cost of nursing home services covered by the Medicaid Program has historically risen, it seems clear that future rates, and thus the mean, will not drop. Therefore, if the state were to use the formula proposed by Holzworth— the mean plus a one half standard deviation—it is a virtual certainty that a number of nursing homes would reap a pecuniary benefit. Though it is possible that the State Board of Health could reject Holzworth's recommendation and impose a far lower ceiling, there is no indication that it will do so. Any such move would have to be made with an eye to Section 249's requirement of reasonableness.

Standing is an "amorphous" concept, surrounded by considerable complexity. *Flast v. Cohen,* 392 U.S. 83, 98–99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). But, however the problem is approached in this case, it is clear that standing is present. The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues . . . ." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The nursing homes have a truly substantial "stake" in eliminating the present ceiling and in bringing about a system of payment from which they would probably benefit financially, according to all indications. They certainly have a "stake" in having invalidated a course of conduct by the state which is contrary to their rights as created by statute. There must be a "logical nexus" between a plaintiff's status and the claim that he is asserting, *Flast v. Cohen, supra,* 392 U.S. at 102, 82 S.Ct. 691, but no more "logical nexus" can be imagined than that between the status of recipient of payments and the claim that the payments are determined in an illegal manner. Standing to sue is clearly present here.

On the merits, the present ceiling does in fact conflict with Section 249. That

section says that payment for nursing home care must be on a reasonable cost related basis. It is undisputed that the present ceiling is not cost related. As Section 249 specifies an effective date of July 1, 1976, Alabama should now be in compliance with it. The HEW regulation[6] does state that the effective date shall be January 1, 1978, but the Department is not authorized to change the date in Section 249. No such authorization appears in the Social Security Act, or in any other statute. HEW is without the power to override acts of Congress or to exempt states from their effect. The Department in fact agrees that it could not extend the date indicated in the statute, and insists that it was not its intention to do so.[7] Where a state is administering a program under the Social Security Act in a fashion which conflicts with the requirements of the Act, judicial enforcement is appropriate. *Rosado v. Wyman, supra; King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

■■■ The principal defense raised by the state is that the Alabama legislature has appropriated insufficient funds to pay for the increase in expenditures which would result from having to set rates on a completely cost related basis. However, inadequate funding does not excuse failure to comply with federal standards. *Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller*, 305 F.Supp. 1256 (E.D.N.Y.1969) (3 judge court), *vacated and remanded for entry of a new order from which appeal to the Court of Appeals could be taken*, 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970), *affirmed on opinion below*, 430 F.2d 1297 (2d Cir. 1970), *appeal dismissed*, 400 U.S. 931, 91 S.Ct. 246, 27 L.Ed.2d 262 (1970). There is no provision, express or implied, in the Social Security Act permitting a state to alter federal standards to suit its budgetary needs. State participation in Social Security Act programs is voluntary, and the state may withdraw if it wishes. But as long as it remains in a program and accepts federal funds, it must follow the federal statutes. *Rosado v. Wyman, supra.* If a state could evade the requirements of the Act simply by failing to appropriate sufficient funds to meet them, it could rewrite the congressionally imposed standards at will. The conditions which Congress has laid down for state participation in Medicaid and other programs would be utterly meaningless. That obviously is not the case. Consequently, Alabama must meet the statutory requirements so long as it remains in the Medicaid Program, regardless of budgetary considerations.

The state points out that any alterations of its approved Medicaid plan must be approved by HEW before they can be implemented. As a result, it would not be appropriate for the Court to order the state to begin implementing the necessary changes immediately. However, the state will be required to submit to HEW within sixty days a plan in conformity with the statute. When the plan is approved, it shall be implemented forthwith. Should HEW fail to approve a conforming plan within a reasonable time, the state will be required to begin paying in accordance with the statute.

■■■ The HEW regulation[8] which sets the effective date at January 1, 1978, is also challenged in this action. As previously discussed, HEW does not contend that it has the power to alter the terms of the statute. Rather, it says that the regulation was simply an articulation of its intention not to enforce Section 249 until January 1, 1978. And, it maintains, it cannot be compelled to enforce the statute. This second

---

6. 45 C.F.R. § 250.30(a)(3)(iv).

7. As will be discussed, HEW contends that it was simply stating a policy of not intending to enforce the statute until 1978, not of trying to override it.

8. 45 C.F.R. § 250.30(a)(3)(iv).

contention is highly questionable,[9] but it is unnecessary to reach that issue in this case. Section 250.30(a)(3)(iv) was promulgated under the authority of 42 U.S.C. § 1302, which requires that any regulations issued thereunder be "not inconsistent with" Chapter 7 of Title 42. Section 249,[10] which is in Chapter 7, says that all states must have implemented reasonable cost related rates by July 1, 1976. The regulation has a later effective date.[11] A clearer inconsistency is difficult to imagine. Consequently, the regulation, insofar as it sets an effective date other than July 1, 1976, is invalid. Although the Court has not reached the issue of whether HEW may be required to enforce the statute, the Department clearly may not act contrary to it. Therefore, when Alabama submits a new plan to HEW, it shall not be approved unless it comports with Section 249.

In summary, Alabama's current rates of payment to nursing homes under the Medicaid Program, to the extent that they are not cost related, are contrary to Section 249 of the Social Security Act. The state will be required to submit a conforming plan to HEW within sixty days. HEW shall approve any conforming plan within a reasonable time. The HEW regulation which purported to give the states until January 1, 1978, to comply with the statute is declared to be invalid. The plaintiffs have requested only prospective relief, as the Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) dictates, and consequently only relief of that nature will be granted.

An order will be entered accordingly.[12]

---

**9.** *National Welfare Rights Organization v. Finch*, 139 U.S.App.D.C. 46, 429 F.2d 725 (1970), stated that a determination by the Secretary of HEW of a state's compliance with another portion of the Social Security Act (welfare) could be challenged in court. *Adams v. Richardson*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973) (en banc), is the leading case compelling HEW to enforce a statute. It found a "consistent failure" to initiate aid termination proceedings against segregated school districts as the Civil Rights Act contemplated, and required HEW to begin doing so. In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the Supreme Court recognized the right of a district court to a limited review of the Secretary of Labor's decision not to contest an election. The issue of proper remedies was not settled. See *Harper v. Levi*, 171 U.S.App.D.C. 321, 520 F.2d 53 (1975); compare *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975).

**10.** 42 U.S.C. § 1396a(a)(13)(E).

**11.** January 1, 1978.

**12.** The Court understands from the parties and the news media that the Governor of Alabama is attempting to undertake the responsibility of administering the Medicaid Program in the state, replacing the State Committee of Public Health. Should he be recognized by HEW as the responsible official, he will be substituted as a party under the provisions of Rule 25(d), Federal Rules of Civil Procedure.